**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Paul Hall,         : | CIVIL ACTION |
|        Plaintiff,     : | |
|                : | Case No. 2:23-cv-01381-HB |
|      v.           : | |
|                : | |
| City of Philadelphia,    : | |
| Shariff Abdus-Salaam (individually), and : | |
| Mike Finnen (individually)    : | |
|                : | |
|      Defendants.    : | |
|                : | |
|                : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
STRIKE PLAINTIFF'S SHAM AFFIDAVIT**

Defendants, the City of Philadelphia (hereinafter, the "City" or "Defendant"), Shariff Abdus-Salaam ("Abdus-Salaam") (individually), and Mike Finnen (individually) (collectively "Defendants") through their counsel, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, hereby include a Memorandum of Law in support of their Motion to Strike Plaintiff's Sham Affidavit.

**I. INTRODUCTION**

The City filed a Motion for Summary Judgment on March 15, 2024. *See* Docket Entry No. 19. After repeated lapses and extensions, Plaintiff, Paul Hall ("Plaintiff") filed his Response in Opposition on June 17, 2024. *Id*. at pp. 20-26. The City then filed a Reply Brief on June 24, 2024. *Id*. at 27. Plaintiff then filed a handful of exhibits on June 26, 2024. *Id*. at No. 28. Ostensibly, the additional exhibits were cited in Plaintiff's Response in Opposition, but not attached when the response was filed on June 17, 2024. *Id*. at Nos. 26 and 28.

One of the newly filed exhibits (No. 16) is a staggering ten (10) page, one hundred and twenty-one (121) paragraph sham Affidavit, which repeatedly contradicts Plaintiff's sworn

deposition testimony. This sham Affidavit, which was manufactured by counsel, is in bad faith and should be stricken in its entirety. [1]

## II. ARGUMENT

### A. Plaintiff's Affidavit Should be Disregarded as a Sham Affidavit

Plaintiff's sham Affidavit, which deliberately undermines his sworn deposition testimony regarding central aspects of this case, should be stricken. The "sham affidavit" doctrine permits the court to disregard an affidavit filed in conjunction with a motion for summary judgment when the affidavit "'contradicts the affiant's prior deposition testimony.'"*Amorosi v. Molino*, Civil Action No. 06-5524, 2009 WL 737338, at *3 (E.D. Pa. March 19, 2009). The sham affidavit doctrine is designed to prevent an opponent to a summary judgment motion from establishing a question of fact through the presentation of an affidavit contradictory to his or her prior deposition testimony. *Jiminez v. All American*, 503 F.3d 247, 252 (3d Cir. 2007). "A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the non-movant." *Id*. at 253.

The examples of contradictory "testimony" in Plaintiff's sham Affidavit are seemingly endless, extending numerous pages. *Some* of the most serious inconsistencies between the **sham Affidavit** and **Plaintiff's deposition** include the following examples:

### 1. *First Example*

**Sham Affidavit**:

Shariff Abdus-Salaam ordered me around with threats and hostility every day. He said things like:

---

[1] The fabrication of his voluminous Affidavit, which intentionally disregards Plaintiff's deposition testimony, is improper. Rather than accept the genuine factual record, Plaintiff has sought to concoct one, devising what must be one of the longest sham Affidavits ever filed in an Eastern District of Pennsylvania employment discrimination case. Far from a harmless mistake, dozens of paragraphs contain "examples" of discrimination and/or retaliation to which Plaintiff never testified.

a. "Shut the f--- up."
b. "Do your f---ing job."
c. "Get the f--- over here."
d. "Stop acting like a bitch."
e. "Just shut up."
f. "Take your nut ass on."
g. "Go the f--- home."
h. "Who gives a f--- about your god"
i. "Don't nobody care about your white Jesus."
j. "Where is your god now?

*See* Plaintiff's Sham Affidavit attached to Plaintiff's Response in Opposition as "Exhibit 16" at paragraph 89.

**Plaintiff's Deposition**

Despite being asked repeatedly for each example of discrimination, Plaintiff never once testified that anyone told him "Shut the f--- up;" "Do your f---ing job;" "Get the f--- over here;" "Take your nut ass on;" "Go the f--- home;" "Don't nobody care about your white Jesus;" and "Where is your god now?" Again, this is despite being asked for each and every example of discrimination and testifying there were no further examples. *See* Exhibit A of the City's Motion for Summary Judgment at p. 88:9-17.

As it pertains to the remaining comments, "Who gives a f--- about you god?" and "Stop acting like a bitch," the first remark was contrived on leading questions from Plaintiff's counsel (subject to another motion to strike) and the second has nothing to do with religion and/or age. *See* Exhibit A of the City's Motion for Summary Judgment at pp. 161:11-163:5.

**2. *Second Example***

**Sham Affidavit**

I was denied overtime by Sharif Abdus-Salaam and he made comments about it and said that he was not going to let me work overtime.

I was denied the ability to work on shifts where there is time and a half and double time

I was denied double time shifts because of m [sic] to his engaging in protected activity. Shariff Abdus-Salaam regularly violated union requirements by not posting information

about overtime so that there is a fair application of overtime opportunities.

Sharif Abdus Salaam intentionally denied me overtime that everyone else received. I was singled out and subjected to harassment and abuse and then Shariff Abdus-Salaam made comments about it like, "now where is your god?.

*See* Exhibit 16 of Plaintiff's Response in Opposition at paragraphs 30; 64-67.

**Plaintiff's Deposition**

Plaintiff never testified to being systematically denied overtime shifts by Abdus-Salaam due to any "protected activity," including on the heels of the comment, "Now where is your God?" As noted at length *supra* and in the City's Motion for Summary Judgment, Plaintiff never even complained of discrimination to anyone. *See* Exhibit A of City's Motion for Summary Judgment at pp. 114:19-115:18. When Plaintiff was pressed on the issue, he testified he did issue written complaints, but they were regarding "harassment, investigation, antagonizing, and unfair," with no mention of discrimination, let alone religious and/or age discrimination and specific examples. *Id*. at p. 122:14-25. Plaintiff added that these hand-written documents, which he called grievances but of course make no mention of discrimination, are part of this case. *Id*. at p. 122:17-25.

Pointedly, when asked for every example of discrimination, Plaintiff never mentioned the denial of overtime by Abdus-Salaam. For example, Plaintiff testified that the first time he was subject to discrimination was in the summer of 2019 when Supervisor Abdus-Salaam said, "Nobody want to hear from your God." *Id*. at p. 69:24-70-1. Plaintiff, of course, cannot recall where the statement was made, maybe outside, maybe inside. *Id*. at p. 72:5-7. The next incident of supposed religious or age discrimination, Plaintiff recalls was in the summer of 2020 when Supervisor Abdus-Salaam said, "Stop acting like a bitch." *Id*. at p. 74:7-20. The next incident of supposed religious or age discrimination, Plaintiff testified that sometime in 2020 where Supervisor Abdus-Salaam said, "Why are you so f---ing stupid?" and, "What's wrong with you?"

*Id*. at p. 77:8-24. Another incident of supposed religious or age discrimination occurred in 20**20**, Plaintiff testified, but then he seemingly referenced the June 8, 20**22** incident, where he was found to have engaged in workplace violence and there was no seeming alleged discrimination. *Id*. at pp. 81:13-83:5 (emphasis added).

In another incident of alleged religious or age discrimination, in the fall of 2021, while working, Plaintiff testified that Supervisor Abdus-Salaam accused him of being "f---ing lazy" since he was lying down at work. *Id*. at p. 78:19-79:3. In the last alleged incident of age or religious discrimination, Plaintiff testified about the June 8, 2022 incident, where he was found to have engaged in workplace violence, but mentions "hollering" and elevated voices, though no religious or age discrimination. Exhibit A at p. 87:2-15; Exhibit R at p. 6. Plaintiff could not recall any "additional" examples of religious or age discrimination. *Id*. at p. 88:9-15.

Plaintiff testified as follows, making it crystal clear there were no more examples of religious or age discrimination:

> Q. …. **Okay. Were there any other incidents of discrimination after that?**
> A.: **After that I was placed on leave.**
>
> Q.: **Ok. So that's the last one. Is that right?**
>
> A.: **Yeah**.

*Id*. at p. 88:9-17 (emphasis added).

**3. *Third Example***

**Sham Affidavit**

Shariff Abdus-Salaam made false reports about me in order to retaliate against me.[2]

*See* Exhibit 16 of Plaintiff's Response in Opposition at paragraph 95.

---

[2] This assertion is dubiously crossed out in Plaintiff's Affidavit.

**Plaintiff's Deposition**

Plaintiff never testified that false retaliatory reports were made against him, whatsoever. As noted throughout this memorandum of law, Plaintiff never complained of discrimination and he did not list any false reports as an example of discrimination. With respect to the June 8, 2022 incident when the police were called, Plaintiff admitted during the investigation of the June 8, 2022 incident, that he followed Abdus-Salaam and various third-party witnesses observed Plaintiff within inches of Abdus-Salaam's face, as Plaintiff launched verbal threats. *See* Exhibit R of City's Motion for Summary Judgment.

**4. *Fourth Example***

**Sham Affidavit**

> Both Mike Finnen and Sharif Abdus-Salaam said that they would not allow any of the written reports that I filed to "make it downtown."
>
> By "downtown" they referred to the human resources department
>
> Mike Finnen said he would not permit any of my reports of discrimination involving Sharif-Abdus-Salaam to make it downtown. One of the times when he said this he took the written report I had drafted and threw it in the trash in front of me

*See* Exhibit 16 at Plaintiff's Response in Opposition at paragraph 95-97. (emphasis added).

**Plaintiff's Deposition**

Plaintiff is misrepresenting testimony about the grievances (which were produced in this case) **and per Plaintiff's admission have nothing to do with discrimination**, but general workplace issues. *See* Exhibit A of City's Motion for Summary Judgment at p. 122:14-25. In fact, Plaintiff testified that the "grievances" were "thrown into the trash," yet they miraculously were produced in discovery. Again, Plaintiff never complained of discrimination. *Id.* at p. 170:5-11.

**5.** *Fifth Example*

**Sham Affidavit**

> Shariff Abdus-Salaam did not give me a chance and he still harasses **me to the present**.
>
> Shariff Abdus-Salaam said that I am always trying to tell on him and that he does not "give a f---" about my reports of discrimination.
>
> He said that he intended to make sure that I get what is coming to me.
>
> Shariff Abdus-Salaam still make it clear that he intends to get me fired.

*See* Exhibit 16 of Plaintiff's Response in Opposition at paragraph 72-74.

**Plaintiff's Deposition**

Actually, Plaintiff testified that the discrimination ceased years ago (in June of 2022) when he was placed on leave. *See* Exhibit A at City's Motion for Summary Judgment at p. 88:9-17. Now, Plaintiff is seeking to pretend, issuing a sworn Affidavit, that he is being discriminated against to this day, although he was isolated in the warehouse away from all of the other employees. *See* the City's Motion for Summary Judgment at "Exhibit J;" *see also* "Exhibit Q." Moreover, as noted throughout this memorandum of law, Plaintiff never complained of discrimination, so it is unclear what "report" Plaintiff is referencing.

**III. CONCLUSION**

Over and over again, Plaintiff's sham Affidavit controverts fundamental components of his sworn deposition testimony. Rather than bolster Plaintiff's case, this desperate submission is another glaring reason why the case should be dismissed at summary judgment. Plaintiff testified under oath at his deposition, which lasted well into the afternoon, that he had provided each and every example of discrimination, as virtually every aspect of this matter was covered in detail. Based on the foregoing, the City's Motion to Strike Plaintiff's Sham Affidavit should be granted.

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

By:    */s/Mark T. Sottile*
        Gaetan J. Alfano, Esquire
        Mark T. Sottile, Esquire
        1818 Market St., Ste. 3401
        Philadelphia, PA 19103
        (215) 320-6200 (telephone)
        MTS@pietragallo.com

        *Attorneys for Defendants*

July 1, 2024