IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL HALL                    :          CIVIL ACTION
                             :
        v.                   :
                             :
CITY OF PHILADELPHIA, et al.  :          NO. 23-1381

MEMORANDUM

Bartle, J.                                    August 26, 2024

        Plaintiff Paul Hall brings this action against
defendants the City of Philadelphia ("City") and its employees
Shariff Abdus-Salaam and Mike Finnen for discrimination and
retaliation in violation of the Age Discrimination Employment
Act, 29 U.S.C §§ 626, 623(d) ("ADEA").  He also alleges racial
and religious discrimination under Title VII of the Civil Rights
Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII") against
all defendants as well as retaliation claims against the City.
Finally, he sues the City under 42 U.S.C. § 1983 for violating
his rights under the Fifth and Fourteenth Amendments.

        Before the court is defendants' motion for summary
judgment (Doc. # 19) pursuant to Rule 56 of the Federal Rules of
Civil Procedure, which contains a motion to strike answers of
plaintiff given at his deposition to leading questions to which
defendants objected.  The court also has before it the motion of
defendants to strike plaintiff's sham affidavit (Doc. # 29).

I

Pursuant to the court's scheduling order, defendants timely filed their motion for summary judgment on March 15, 2024 (Doc. # 19).  The court granted plaintiff three extensions of time to file his response in opposition.  Although plaintiff was finally due to respond on June 11, 2024, he failed to do so until June 17, 2024 (Doc. # 26).  The response cited a total of twenty-four exhibits, but only Exhibits 1 through 14 were attached.  The additional exhibits were not submitted until June 26, 2024 (Doc. # 28), two days after defendants filed a reply in support of their motion for summary judgment (Doc. # 27).

Exhibit 16 is a ten-page affidavit signed by Paul Hall on June 9, 2024 — months after the defendants filed their motion for summary judgment.  Defendants moved to strike this affidavit, as they maintain it is a "sham" manufactured by counsel.

II

The court will first consider the motion to strike plaintiff's sham affidavit.  The sham affidavit doctrine permits courts to disregard an affidavit submitted in opposition to a motion for summary judgment "when the affidavit contradicts the affiant's prior deposition testimony."  In re CitX Corp., Inc., 448 F.3d 672, 679 (3d Cir. 2006) (quoting Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004)).  The court should consider

whether such contradictions were the result of a witness'
confusion or misstatement.  If the affiant was "carefully
questioned on the issue, had access to the relevant information
at that time, and provided no satisfactory explanation for the
later contradiction, the courts of appeals are in agreement that
the subsequent affidavit does not create a <u>genuine</u> issue of
material fact."  <u>Martin v. Merrell Dow Pharms., Inc.</u>, 851 F.2d
703, 706 (3d Cir. 1988).  Plaintiff contends that the affidavit
is consistent with the deposition testimony.  However, the
portions of the deposition cited were objected to by defense
counsel as leading.[1]

Defendants maintain there are multiple topics in which
the affidavit and plaintiff's deposition testimony contradict.
Plaintiff contends there were no contradictions between the
affidavit and plaintiff's testimony; rather, he argues that the
list of discriminatory incidents provided in the deposition was
not exhaustive, demonstrating the affidavit was not a sham.
Upon examination of the deposition and affidavit provided, the
court agrees with the defense.

First, defendants aver that plaintiff, in his
affidavit, provides a more exhaustive list of "threats and

---

1.   Within his response to the motion to strike the sham
affidavit, plaintiff did not address defendants' arguments that
plaintiff's testimony was made in response to leading questions.

hostility" made by plaintiff's supervisor and defendant, Shariff Abdus-Salaam, than plaintiff testified to at his deposition. Plaintiff explains this seeming contradiction by noting that, in his deposition, he stated that he had not testified to an exclusive list of each instance of discrimination.  In fact, plaintiff stated that "[h]e has a number of numerous other instances, but I have to recollect and recall those certain things off the top of my head.  But yes, there has been other instances."

The affidavit also avers that Abdus-Salaam made "false reports" in retaliation against plaintiff.  However, plaintiff provided no additional details regarding this, and did not discuss such false reports in his deposition.  Plaintiff does not explain the discrepancy in his affidavit, nor does his counsel address such discrepancy in his opposition to the motion to strike.

Finally, the affidavit avers that defendant Abdus-Salaam continues to harass plaintiff to this day.  At his deposition, plaintiff stated that he did not experience discrimination after June 2022, when he was placed on paid administrative leave.  Plaintiff's counsel failed to provide an explanation for this contradiction.

Plaintiff introduced this affidavit in response to defendants' motion for summary judgment in order to create

issues of material fact.  Defendants' motion to strike will be granted and the court will disregard all conflicting facts from plaintiff's affidavit.

### III

Defendants have also moved to strike plaintiff's testimony that is a result of his counsel's leading questions at his deposition and to which defendants objected.  Rule 611(c) of the Federal Rules of Evidence states that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony."  This rule is liberally construed, and it is within the trial court's discretion as to whether the interest of justice so requires that such testimony be struck.  See Commonwealth v. Reeves, 110 A. 158, 159 (Pa. 1919); see also Fed. R. Civ. P. 30(c).

It is generally improper for counsel to pose leading questions to a friendly witness.  Jarbough v. Att'y Gen. of the U.S., 483 F.3d 184, 192 (3d Cir. 2007).  "The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record.  It is the witness — not the lawyer — who is the witness."  Hall v. Clifton Precision, 150 F.R.D. 525, 531 (E.D. Pa. 1993).  Leading questions have been considered appropriate where counsel has made repeated attempts to solicit the same information through the use of non-

leading questions.  In Anderson v. Ford Motor Co., the court exercised its discretion not to strike testimony that was the result of a leading question asked to a sick plaintiff.  MDL No. 875, 2011 WL 5505458, at *1 n.1 (E.D. Pa. Apr. 29, 2011).  In addition to a need to refresh the witness' recollection, the court may also consider whether the use of leading questions is limited.  See, e.g., Pendergast v. Am. Optical Corp., MDL No. 875, 2011 WL 5458097, at *1 n.1 (E.D. Pa. July 1, 2011).

In this action, counsel's use of leading questions was persistent throughout his direct examination of plaintiff. Plaintiff has identified no conditions that made it difficult for him to recall his experiences at the time of his deposition.

Consequently, the testimony of plaintiff that is a result of his counsel's leading questions during his deposition will be stricken and will not be considered in deciding defendants' motion for summary judgment.

IV

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving

party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254
(1986).  The court views the facts and draws all inferences in
favor of the nonmoving party.  See In re Flat Glass Antitrust
Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient
record evidence for a reasonable factfinder to find for the
nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence
of a scintilla of evidence in support of the [nonmoving party]'s
position will be insufficient; there must be evidence on which
the jury could reasonably find for [that party]."  Id.  In
addition, Rule 56(e)(2) provides that "[i]f a party fails to
properly support an assertion of fact or fails to properly
address another party's assertion of fact as required by
Rule 56(c), the court may . . . consider the fact undisputed for
the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

V

The court, in considering the defendants' motion for
summary judgment, reviews the facts in the light most favorable
to plaintiff.

Plaintiff Paul Hall is a 54-year-old Christian
African-American.  In June 2018, he was hired as a cement mason
for the Parks and Recreation Department of the City of

Philadelphia ("PPR").[2]  His baseline salary was $39,716 and he had opportunity for overtime.

Plaintiff reported to the cement unit's supervising foreman, Rick Antinucci, from approximately 2018 through January 2021. Antinucci, age 65, was also a Christian.  On or about January 2021, defendant Abdus-Salaam, a Muslim and a City bricklayer, became plaintiff's supervisor.  Abdus-Salaam directly reported to Luis Torres, Building Maintenance Superintendent who in turn directly reported to defendant Mike Finnen, Building Maintenance Superintendent II.

Plaintiff asserts that Abdus-Salaam said that he "don't care about [plaintiff's] god."[3]  This incident apparently occurred in the summer of 2019.  Plaintiff also states that he filed four grievances regarding Abdus-Salaam's treatment of him. However, none of these grievances is in the record.[4]

Records indicate pervasive, inappropriate behavior displayed by plaintiff while on worksites.  On March 6, 2019, plaintiff's direct supervisor from 2018 to January of 2021, Rick

---

2.   The parties refer to Hall as both a "cement finisher" and "cement mason."

3.   The record does not reflect the exact date or location that this incident occurred.

4.   Hall argues that records of these grievances were deleted in order to ensure that there was no evidence of mistreatment. Defendants counter this and argue that in the PPR, emails are deleted automatically, as a standard practice.

Antinucci, submitted an employee warning record to the City regarding plaintiff, contending that plaintiff left his job site while work was still in progress without notifying his supervisor.  Additionally, on February 3, 2020, defendant Abdus-Salaam submitted an employee warning record to the City regarding plaintiff's refusal to comply with direct orders given by the onsite supervisor.

On June 8, 2022, plaintiff and defendant Abdus-Salaam were involved in an argument regarding overtime.  The police were called.  The City's Human Resources Department ("HR"), as is standard practice, commenced an investigation into the incident.  During the investigation, plaintiff was placed on paid administrative leave.  The investigation found that plaintiff was "yelling, hollering or shouting" during the argument, and that "all witness accounts [reflected] that [Abdus-Salaam] attempted to deescalate the conflict by removing himself from the area."  HR found that plaintiff's actions violated the City's Workplace Violence Policy[5] and recommended

_____

5.   The City provides employees with a Workplace Violence Policy, which is intended to reduce possible violence in the workplace.  Additionally, this policy creates a method by which employees can effectively report violence, threats of violence, harassment and intimidation which occur in the workplace. Violent behavior, as defined by this workplace policy, may be verbal, written, or physical.  Hall asserts he was aware of this policy.

that plaintiff be placed on administrative leave.  Plaintiff
continued on paid administrative leave.

Around August or September of 2022, Frank Fabey, the
Deputy Commissioner of the PPR, in conjunction with HR, decided
to transfer plaintiff to work at a warehouse.  Neither defendant
Abdus-Salaam nor defendant Finnen had the authority to
terminate, suspend, or reassign a PPR employee.

Fabey and HR made this decision on the basis of
disciplinary records submitted regarding plaintiff's workplace
behavior throughout the course of his employment, reports by co-
workers, and workplace warnings given to plaintiff by his
supervisor, Abdus-Salaam.  These records demonstrated that
plaintiff did not listen to his supervisor's orders and at
times, refused to work while on the worksite.  HR and Deputy
Commissioner Fabey also considered the internal HR investigation
regarding the June 8, 2022 altercation between plaintiff and
Abdus-Salaam.

Plaintiff did not file an internal complaint against
the City, Abdus-Salaam, or Finnen through the City of
Philadelphia's Employee Relations Unit, which permits an
employee to file an Equal Employment Opportunity complaint
online.  He also did not file an internal complaint or grievance
through the union of which he is a member.  However, though
plaintiff did not submit grievances through the official

channels, he did file handwritten complaints against defendant

Abdus-Salaam through Luis Torres, Building Maintenance

Superintendent, between 2020 and 2022.

VI

As noted above, the plaintiff has sued the City of

Philadelphia as well as its employees Abdus-Salaam and Mike

Finnen under the ADEA and Title VII.  Abdus-Salaam and Finnen

were employees of the City.  Individuals may not be held liable

under Title VII.  See Sheridan v. E.I. DuPont de Nemours & Co.,

100 F.3d 1061, 1078 (3d Cir. 1996), cert. denied, 521 U.S. 1129

(1997).

The ADEA defines an employer in the same manner as

does Title VII.  Compare 29 U.S.C. § 630(b) with 42 U.S.C.

§ 2000e(b).  Multiple circuits as well as district courts in our

circuit have determined that individual employees are not liable

under the ADA.  See Stults v. Conoco, Inc., 76 F.3d 651, 655

(5th Cir.1996); see also Holocheck v. Luzerne Cnty. Head Start,

Inc., 385 F. Supp. 2d 491, 496 (M.D. Pa. 2005).

Accordingly, the motion of defendants Abdus-Salaam and

Finnen for summary judgment on Count I alleging violations of

the ADEA, on Count II alleging retaliation against him in

violation of the ADEA, and on Count III alleging violations of Title VII, will be granted.[6]

VII

Plaintiff, age 54, alleges in Count I that the City of Philadelphia discriminated against him on the basis of his age in violation of the ADEA.  Additionally, he alleges this discrimination resulted in a hostile work environment.

The ADEA prohibits an employer from discriminating against employees age 40 and older.  29 U.S.C. §§ 623, 631(a). To establish a claim of age discrimination, a plaintiff must show that he or she is forty years of age or older, that his or her employer took an adverse employment action against plaintiff, that the plaintiff was qualified for that position, and finally, that he was replaced by another employee sufficiently younger to support an inference of discriminatory animus.  Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009).

The City does not dispute that plaintiff, a 54-year-old, satisfies the age requirement of the ADEA.

An adverse employment action is a "significant change in employment status, such as . . . failing to promote,

_____

6.  Count VI is brought "against corporate Defendants only." Although there are no corporate defendants in this case, the court can only reasonably view this claim as one against the City of Philadelphia and not the individual defendants.

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Anderson v. Mercer Cnty. Sheriff Dep't, 815 F. App'x 664, 666 (3d Cir. 2020) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  This action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Langley v. Merck & Co., Inc., 186 F. App'x 258, 260-61 (3d Cir. 2006).  Should an employee allege that a transfer is an adverse employment action, he or she must display some harm regarding an "identifiable term or condition of employment." Muldrow v. City of St. Louis, Mo., 144 S. Ct. 967, 974 (2024).

In Fiorentini v. William Penn School District, our Court of Appeals held that reassignments that do not impact salary, benefit, title, or responsibilities are not adverse employment actions.  665 F. App'x 229, 234-35 (3d Cir. 2016). In this action, plaintiff's transfer from his job as a cement finisher to a warehouse worker significantly changed his responsibilities.  After working in manual labor, he now has an office position.  Additionally, plaintiff argues that his position in the warehouse limits his opportunities for overtime. While cement finishers with the City may pick up overtime shifts through a rotational schedule pursuant to a union agreement, chances for overtime are more limited in his new role.  A

reasonable jury could find on the basis of the facts available in the record that plaintiff's transfer is an adverse employment action.

Even if his transfer was an adverse employment action, the City argues that plaintiff cannot show that he was qualified for his job as a cement finisher.  The City also maintains that he cannot show that he was replaced by a younger employee.

In support of his qualifications, plaintiff cites to two positive performance reviews, which occurred on October 1, 2019 and on October 1, 2021.  Nevertheless, Fabey and HR relied on contrary and more recent information regarding plaintiff's behavior on the job.  The record shows that plaintiff received multiple warning records from February 2020 through August 2021. Significantly, Fabey and HR relied on a police report and HR investigation pertaining to the June 8, 2022 incident with Abdus-Salaam.  The record demonstrates plaintiff's failure to participate in his job as a cement finisher and an escalating pattern of workplace intimidation and violence.  Such evidence belies these two older positive performance reviews.  See, e.g., Cridland v. Kmart Corp., 929 F. Supp. 2d 377, 387 (E.D. Pa. 2013).

Even if plaintiff had been qualified in 2019 and 2021, the relevant time for determining his qualification is the date of his transfer on or around August or September 2022.  This was

-14-

after his altercation with defendant Abdus-Salaam which resulted
in the police being called.  Plaintiff has come forward with no
evidence that he was qualified at that time in light of this and
all intervening events.  Passing muster at one time does not
immunize him from later failing to do so.

Even if the plaintiff has evidence that he was
qualified as a cement finisher when he was transferred, he
identifies nothing in the record that Deputy Commissioner Fabey
and the HR decisionmakers who were responsible for his transfer
based their decision on his age.  There is also no indication
that defendant Abdus-Salaam, his direct supervisor, made any
comments regarding plaintiff's age.  Finally, it is significant
that plaintiff has pointed to no evidence that he was replaced
as a cement finisher by a younger person.

A claim for a hostile work environment under the ADEA
requires that the workplace was "permeated with discriminatory
intimidation, ridicule, and insult that is sufficiently severe
or pervasive to alter the conditions of [his] employment[.]"
Culler v. Sec'y of U.S. Veterans Affs., 507 F. App'x 246, 247
(3d. Cir. 2012) (quoting Nat'l R.R. Corp. v. Morgan, 536 U.S.
101, 116 (2002)).  To be severe or pervasive, such behavior must
alter the conditions of plaintiff's employment.  Carroll v.
Guardant Health, Inc., 511 F. Supp. 3d 623, 649 (E.D. Pa. 2021).
Offhanded comments and isolated incidents are insufficient.  Id.

There are no comments in the record indicating that
defendant Abdus-Salaam, or anyone else, created an age-related
hostile work environment.  Again, plaintiff has come forward
with no evidence to support age-related hostile work environment
claim.

Accordingly, the motion of the City of Philadelphia
for summary judgment on plaintiff's claim of age discrimination
will be granted.

VIII

Plaintiff, an African-American, alleges in Count III
that the City discriminated against him based on his race in
violation of Title VII.  Plaintiff contends that the City
engaged in disparate treatment as well as created a hostile work
environment.

Title VII prohibits discrimination by an employer
against an employee based on race.  See 42 U.S.C. § 2000e-2(a).
To establish a prima facie claim of race discrimination, the
plaintiff must demonstrate that he is a member of a protected
class, that he suffered an adverse employment action, and that
the circumstances of this employment action give rise to an
inference of unlawful discrimination.  Nagle v. RMA, The Risk
Mgmt. Ass'n, 513 F. Supp. 2d 383, 387-88 (E.D. Pa. 2007).

Plaintiff argues that his transfer to the warehouse
was an adverse employment action based on his race.  Plaintiff

-16-

must come forward with evidence that the circumstances give rise
to an inference of unlawful discrimination.  He may do so by
showing that similarly situated individuals outside of his
protected class were treated more favorably.  See, e.g.,
Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir.
2009).  Plaintiff fails to identify any such comparators.
Further, there is no evidence of racially-motivated comments
made to or about plaintiff.

A claim for hostile work environment requires that the
workplace be "permeated with discriminatory intimidation,
ridicule, and insult[.]"  Culler v. Sec'y of United States
Veterans Affairs, 507 F. App'x 246, 247 (3d. Cir. 2012) (quoting
Nat'l R.R. Passenger Corp., 536 U.S. at 116).  To prevail, a
plaintiff must demonstrate, among other elements, that the
harassment was severe or pervasive.  Howell v. Millersville
Univ. of Pa., 283 F. Supp. 3d 309, 333 (E.D. Pa. 2017).  The
standard for severe and pervasive conduct is such that this
extreme behavior "alter[s] the conditions of the victim's
employment and create[s] an abusive working environment."
Carroll, 511 F. Supp. 3d at 657.  Mere teasing, offhand
comments, or isolated incidents are insufficient to establish a
hostile work environment.  Id. at 658.

The City does not dispute that plaintiff is a
protected class as an African-American.  However,  plaintiff has

no evidence to meet the other requirements of Title VII.
Plaintiff references no comments made to him or anyone else
regarding his race.  The record is also devoid of any facts to
support the existence of a racially hostile working environment.

Accordingly, the motion of the City of Philadelphia
for summary judgment on plaintiff's claim of race discrimination
will be granted.

IX

Plaintiff further alleges in Count III that the City
of Philadelphia discriminated against him on the basis of his
religion in violation of Title VII.

Title VII prohibits an employer from discriminating
against an employee based on his or her religion, which includes
"all aspects of religious observance and practice, as well as
belief, unless an employer demonstrates that he is unable to
reasonably accommodate to an employee's . . . religious
observance or practice without undue hardship on the conduct of
the employer's business."  42 U.S.C. § 2000e(j).

To establish a prima facie claim of religious
discrimination, a plaintiff must come forward with evidence that
he was a member of a protected class, that he was qualified for
the position, that he suffered an adverse employment action, and
that this action occurred under circumstances that give rise to
an inference of discrimination.  Makky v. Chertoff, 541 F.3d

205, 214 (3d. Cir. 2008).  If a plaintiff can establish a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).  If defendant presents evidence of such a reason, the burden shifts back to the plaintiff to show this reason is merely pretext.  Id. at 507-08.

Plaintiff cites only one allegedly discriminatory comment which was made to him by defendant Abdus-Salaam, apparently in 2019, that he "don't care about [plaintiff's] god."  There is no evidence that Fabey or HR knew about this comment or took it into consideration when deciding to reassign plaintiff.  This singular comment made a number of years ago is insufficient to raise an inference of discriminatory intent. See, e.g., Pivorotto v. Innovative Sys., Inc., 191 F.3d 344, 359 (3d Cir. 1999) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992)).  The comment is neither pervasive nor severe misconduct.  Plaintiff has failed to point to any evidence of discrimination on the basis of religion.

Plaintiff has referenced nothing to support his assertion that defendant's legitimate, non-discriminatory reason for his reassignment was pretext.  The undisputed record shows

that the transfer occurred because of plaintiff's violation of
the Workplace Violence Policy as identified in the HR
investigation report of the June 8, 2022 incident as well as a
pattern of insubordination and confrontations.

There is nothing before the court indicating Deputy
Commissioner Fabey and HR considered plaintiff's religious
affiliation or even knew about his affiliation when reassigning
plaintiff.  See, e.g., Geraci v. Moody-Tottrup, Int'l, Inc., 82
F.3d 578, 581 (3d Cir. 1996).

No reasonable jury could find that the City
discriminated against plaintiff on the basis of his religion in
transferring him to work at the warehouse.  Accordingly, the
motion of the City of Philadelphia for summary judgment as to
plaintiff's claim of religious discrimination under Title VII
will be granted.

X

Plaintiff alleges that the City of Philadelphia
retaliated against him because he filed complaints regarding its
unlawful employment practices which were protected under both
the ADEA (Count II) and Title VII (Count IV).  The analysis of a
retaliation claim under the ADEA and under Title VII is the
same.  See, e.g., Barber v. CSX Distrib. Servs., 68 F.3d 694,
701 (3d Cir. 1995).

To establish a prima facie claim of retaliation, a plaintiff must show that he or she engaged in protected activity, the employer took an adverse employment action against plaintiff, and there was a "causal connection" between the participation in the protected activity and the adverse employment action.  Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

First, the City maintains that plaintiff did not engage in protected activity.  Plaintiff contends that he engaged in protected activity "through written reports that pre-date all of the adverse employment actions."

An internal complaint constitutes protected activity when it is "specific enough to notify management of the particular type of discrimination at issue."  Ade v. KidsPeace Corp., 698 F. Supp. 2d 501, 520 (E.D. Pa. 2010).  These complaints or reports must discuss discrimination that Title VII protects employees against, rather than complaints of behavior unrelated to the conduct that Title VII prohibits.  See, e.g., Brangman v. AstraZeneca, LP, 952 F. Supp. 2d 710, 721 (E.D. Pa. 2013).

Plaintiff did write internal complaints regarding his dissatisfaction with the management.  While no copies of these

complaints have been produced,[7] several individuals in management
at the PPR confirm plaintiff's habit of submitting complaints.
Finnen testified that he recalls having sent two of the
complaints "downtown," that is, to HR.  Luis Torres, Building
Maintenance Superintendent, also testified that it was
plaintiff's common practice to provide handwritten complaints to
management between 2020 and 2022.  Viewing the evidence in the
light most favorable to the plaintiff, the court considers these
complaints protected action.

Plaintiff alleges the following adverse employment
actions: (1) denial of overtime, (2) his placement on paid
administrative leave, (3) false discipline, (4) disciplinary
measures, such as counseling, after he reported discrimination
and harassment; and (5) his reassignment.  An adverse employment
action is one that changes the "employee's compensation, terms,
conditions, or privileges of employment, deprive[] him . . . of
employment opportunities, or adversely affect[] his . . . status
as an employee[.]"  Davis v. City of Newark, 285 F. App'x 899,
904 (3d Cir. 2008).

Plaintiff maintains that Abdus-Salaam denied him
overtime opportunities.  In plaintiff's deposition, he notes two

---

7.  Plaintiff claims in his deposition that some reports were
deleted over the course of an automated email purge completed by
the City of Philadelphia to employee email accounts.  This purge
occurs every four months.

-22-

instances in which overtime was denied.  First, he was rejected
for overtime in the summer of 2020.  He concedes, however, that
he was not permitted to work on that occasion because he was
thirteen minutes late to work.  As plaintiff has failed to
provide evidence that such legitimate, non-retaliatory reason
for this denial was a pretext, this cannot be an adverse
employment action.

The second time that he was denied overtime was on
June 8, 2022, a dispute which culminated in the police being
called.  The HR investigation report explains that Abdus-Salaam
denied plaintiff overtime because he failed to adhere to City
policy that requires an employee to work at least three overtime
shifts during the week to qualify for Saturday overtime.  There
is no evidence that plaintiff had worked the required weekday
overtime shifts.  This incident does not serve as the basis for
a valid retaliation claim.

The City maintains that plaintiff was placed on paid
administrative leave due to its pending HR investigation into
the June 8, 2022 altercation with defendant Abdus-Salaam.  There
is no contrary evidence in the record that this paid
administrative leave was due to plaintiff's pattern of making
internal complaints.  There is no simply causal relationship
between plaintiff's protected action and his transfer.

Plaintiff maintains that he was the subject of "false discipline." Plaintiff never explains what was false about any discipline. The record is devoid of any support for this assertion.

The City did impose a counseling requirement on plaintiff. However, the requirement to take workplace violence and civility training was imposed on the entire unit, including supervisor, as a result of HR's investigation into the June 8, 2022 incident. Such a requirement is standard in cases of workplace violence and was not imposed solely on plaintiff. Again, this was not an adverse employment action causally related to his practice of filing internal complaints.

To defeat summary judgment, plaintiff must also come forward with evidence of temporal proximity between the protected activity and the alleged action and a pattern of antagonism in the "intervening period." Hussein v. UPMC Mercy Hosp., 466 F. App'x 108, 112 (3d Cir. 2012).

In cases where "temporal proximity is not clearly suggestive standing alone," other information is required to examine if the temporal proximity is "unduly suggestive." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d. Cir. 2000). Should evidence of temporal proximity be unclear, the courts may then examine the "pattern of antagonism", alongside other inferences, to determine retaliation. Id.

Plaintiff reported his grievances to his superiors during the summer of 2019 in addition to sometime during the years 2020, 2021, and 2022.  He was transferred to the warehouse in August or September 2022.  The court recognizes the possibility of temporal proximity between the alleged action and the alleged complaints occurring in 2022.[8]  However, it is unclear when in 2022 plaintiff filed his grievance.  Due to the lack of evidence indicating the time between plaintiff's reports and his ultimate transfer, it is necessary to examine other contextual information to determine if the defendant retaliated.

The transfer, which occurred on or around August or September 2022, was imposed after HR's investigation into the June 8, 2022 incident.  At the time of the investigation, plaintiff was placed on paid administrative leave and continued in this status until he was transferred to the warehouse. Plaintiff's only evidence of antagonism after the June 8, 2022 incident was the decision to place him on paid administrative leave, which is standard procedure during a pending HR investigation.  There is no evidence that his transfer is causally related to any protected action.

---

8.   Though the court views the reports submitted in 2020 through 2022 as protected activity, there is no evidence of the reports on the record.

Plaintiff has failed to establish a prima facie case of retaliation.  Accordingly, the motion of the City of Philadelphia for summary judgment will be granted as to plaintiff's retaliation claims under the ADEA and under Title VII.

XI

Finally, plaintiff in Count V sues defendants for violating under 42 U.S.C. § 1983 his Fifth and Fourteenth Amendment rights.[9]

To establish that defendants violated plaintiff's procedural due process rights, he must first establish that he had a property interest, and second, that the procedures available did not provide him with due process.  Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).  A federally protected property interest is not created by the Constitution but rather by an independent source such as state law.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577-78 (1972).

Plaintiff states in his response that as a union member, he "had a contractual right to certain procedural

---

9.   Plaintiff's complaint alleges that he was denied procedural due process and that defendants violated his right to be free from unreasonable search and seizure.  However, plaintiff's response in opposition to defendants' motion for summary judgment only discusses a violation of his right to procedural due process.  Therefore, the court deems plaintiff to have waived any argument based on unreasonable search and seizure.

safeguards."  However, he identifies no specific contractual provision regarding reassignment.  While defendants filed the Tentative Agreement for District Council 33, dated September 3, 2021, it does not identify procedural due process requirements for employees who will be reassigned.  As plaintiff fails to identify a provision on which to base this property interest, he cannot establish a violation of his procedural due process rights under the Fifth or Fourteenth Amendments.

Even taking the facts in the light most favorable to the nonmoving party, plaintiff cannot prevail in his claim that the defendants violated his Fifth or Fourteenth Amendment rights.  Thus, defendants' motion for summary judgment will be granted as to Count V.